SO ORDERED.

SIGNED this 14th day of August, 2023.



_____
Dale L. Somers
United States Chief Bankruptcy Judge

Designated for online use only
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

In Re:

Sharon Kay Harrison,

          Debtor.

Sharon Kay Harrison,

          Plaintiff,

v.

Nationstar Mortgage LLC dba Mr. Cooper,

          Defendant.

Case No. 17-40846
Chapter 13

Adv. No. 22-07001

Memorandum Opinion and Order
Denying Complaint for Damages
for Violation of the Discharge Injunction

Debtor alleges defendant failed to properly apply and credit postpetition mortgage payments, thereby violating the § 524(i)[1] discharge injunction and entitling her to recover damages.[2] Based upon a joint stipulation of facts,[3] the parties submitted the question of liability for determination by the Court. The Court concludes there was simply a delay in the correct application of an escrow deposit, without any additional charges to Debtor. The delay was the result of Creditor's failure to follow its usual procedures, not a willful misapplication of a plan payment. The discharge injunction was not violated.

I.  **Findings of Fact**

On November 9, 2013, Plaintiff Sharon Kay Harrison ("Debtor") signed a note for $66,884 to Citibank, N.A., secured by a mortgage on her residence. Defendant Nationstar Mortgage LLC dba Mr. Cooper ("Creditor") is the current holder of the note.

Debtor filed for relief under Chapter 13 on July 21, 2017. Creditor's proof of claim asserts a balance of about $58,000, with an arrearage of

---

[1] 11 U.S.C. § 524(i). All references to Title 11 in the text shall be to the section number only.

[2] The parties have stipulated that the Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b).

[3] Debtor appears by Chelsea S. Williamson. Defendant appears by Timothy J. Thompson.

$101.37. Debtor's Chapter 13 plan was confirmed on October 2, 2017. It provides for cure of the arrearage through payments by the Trustee and ongoing monthly mortgage payments by Debtor directly to Creditor. On February 2, 2021, the Chapter 13 Trustee filed a Notice of Final Cure,[4] reporting that the Trustee had paid the arrearage. Creditor filed a response stating the arrearage had been paid but there was a postpetition balance of $1,239.95 which first became due on January 1, 2021.[5] Debtor did not reply. Discharge was entered on March 23, 2021,[6] and the case was closed.

On January 12, 2022, after the case was reopened, Debtor filed the adversary complaint currently before the Court. She alleges Creditor misapplied postpetition payments in violation of § 524(i) causing her material injury and prays for damages, attorney fees, and punitive damages for contempt under § 105. Creditor contends it did not violate § 524(i). The parties agreed to submit the question of liability based upon stipulated facts before offering evidence of damages.

---

[4] Doc. 36, case no. 17-40846.

[5] The response was filed on February 22, 2012, but does not have a document number.

[6] Doc. 40, case no. 17-40846.

Debtor focuses on her monthly payment due to Creditor in March 2019.[7] She does not allege her payment was misapplied,[8] rather she contends Creditor caused her injury by first stating she had a balance that could be used in partial satisfaction of the monthly payment and then reversing that position.

The details of events are as follows. Debtor made her full monthly payments through February 2019. In March 2019, Debtor's monthly payment was $713.25, comprised of a $414.75 note payment and $299.08 escrow deposit. On March 20, 2019, Debtor phoned Creditor about her March

---

[7] The joint stipulation of facts (Doc. 24) provides the Court with the bankruptcy case chronology and voluminous exhibits, including history of note payments and the communications history. That history includes records of telephone conversations between Debtor and Creditor's representatives and communications among Creditor's staff regarding Debtor's payments. The Court is not provided with an explanation of the acronyms used in the communications or the positions and authority of the participating representatives. The stipulation is primarily a stipulation of the authenticity of exhibits rather than a stipulation of facts. The Court therefore relies heavily upon the facts included in the parties' arguments, none of which have been challenged by the opposing party.

[8] The stipulation of facts includes the following: "Plaintiff [Debtor] does not allege that any payments made to Defendant [Creditor] were not applied." Doc. 24, 4.

4

payment.[9] She was advised she had a balance of $299.08 in suspense[10] which could be applied to the $713.25 March payment. Debtor paid $414.17. The Creditor's representative sent a request to the bankruptcy department to move the $299.08 in suspense to the March escrow deposit. On March 22, 2019, a representative of the bankruptcy department, whose authority is not known, denied the request, but this decision was not communicated to Debtor. When Debtor called Creditor on March 25, she was advised application of the suspense funds was under review by the bankruptcy department.

On April 2, 2019, Creditor's bankruptcy department exchanged multiple internal emails regarding moving the $299.08 from suspense to Debtor's March escrow deposit. It was ultimately decided that the funds had been placed in suspense in error and correction was requested. Again this was not promptly communicated to Debtor. Debtor called Creditor on April 12 and

---

[9] The Communication History Profile for the period March 2019 through December 2021 attached to the stipulation of facts (Doc. 24-1) shows that it was Debtor's practice to call Creditor's customer service representatives each month about her payment.

[10] The Court is not informed as to the purpose of the suspense account or the circumstances that gave rise to a balance in favor of Debtor. Since the amount in suspense was equal to the monthly escrow deposit and it is stipulated that Debtor made her monthly payments and no payments in excess of the amount due in the months preceding March 2019, the Court surmises the portion of a prior month's payment which should have been credited to her escrow balance was erroneously credited to suspense.

5

May 30, 2019, to inquire of the status of the $299.08 in suspense. When Debtor called again on June 11, 2019, Creditor's representative advised that the $299.08 could not be applied toward her March escrow deposit and she needed to pay the $299.08 in addition to the regular June 2019 payment. Debtor made her full monthly payment on June 19, 2019, as she had in April and May, 2019. Debtor made the additional $299.08 escrow deposit which had been due in March 2019 on June 17, 2020. However, Debtor did not make her June 2020 regular plan payment.[11]

## II. Analysis

### A. Violation of the Discharge Injunction

Under § 524(i), a creditor's willful misapplication of any payments contrary to a confirmed plan may be remedied as a violation of the discharge injunction if material injury to the debtor resulted. The section provides:

> The willful failure of a creditor to credit payments received under a plan confirmed under this title, unless the order confirming the plan is revoked, the plan is in default, or the creditor has not received payments required to be made under the plan in the manner required by the plan (including crediting the amounts required under the plan), shall constitute a violation of an injunction under subsection [524(a)(2)] if the act of

---

[11] This nonpayment appears to be the source of the postpetition payment due of $1,239 reported by the Creditor in response to the Trustee's Notice of Final Cure filed on February 22, 2012 in case no. 17-40846. Debtor has not disputed Creditor's response. There are no relevant stipulated facts.

6

> the creditor to collect and failure to credit payments in the manner required by the plan caused material injury to the debtor.

One of the classic situations addressed by the section is when "a chapter 13 debtor makes all of the required payments on long-term debt required throughout the life of his confirmed plan, receives a discharge, and then is told that his mortgage is in default, he owes additional charges, and is threatened by foreclosure."[12] A violation of § 524(i) also occurs when a creditor "misapplied ongoing monthly payments from the trustee to the prepetition arrearage claim, misapplied ongoing monthly payments to the wrong month, and misapplied prepetition arrearage payments to the ongoing monthly payments,"[13] resulting in demand for postpetition payments which had already been paid through the Chapter 13 plan. In contrast, as a commentator observes, "creditors should not be in violation of the injunction for internal accounting inconsistencies as along as steps are not taken to commence an action to collect any deficiencies caused by the internal accounting."[14]

---

[12] *Ridley v. M&T Bank (In re Ridley)*, 572 B.R. 352, 361 (Bankr. D.N.M. 2017).

[13] *Bivens v. NewRez LLC (In re Bivens)*, 625 B.R. 843, 848 (Bankr. M.D.N.C. 2012).

[14] 3 *Norton Bankruptcy Law & Practice* 3d § 58:2.

There are two requirements to establish a violation of § 524(i): "1) a willful failure to credit payments received under a confirmed plan and 2) material injury to the debtor."[15] Section 524(i) provides such conduct is a violation of the discharge injunction of § 524(a)(2). Therefore, the appropriate remedy for violation of § 524(i) is pursuant to the Court's contempt power under § 105.[16] The debtor has the burden to prove a contempt by clear and convincing evidence.[17]

**B. The Parties' Arguments**

Debtor submits Creditor's action regarding application of suspense funds in partial satisfaction of her March 2019 payment was a willful failure to credit a payment in violation of §524(i). She argues that on March 20, 2019, at Creditor's direction to satisfy her monthly payment of $ 713.25, she made a partial payment of $414.17 and relied on Creditor's "promise" that $299.08 in suspension would be applied to satisfy the remainder. Although Debtor repeatedly called Creditor to check on the status of applying the $299.08, she was not informed until three months later that Creditor had made a mistake

---

[15] *In re Ridley,* 572 B.R. at 361.

[16] *Otero v. Green Tree Servicing, LLC (In re Otero),* 498 B.R. 313, 319 (Bankr. D.N.M. 2013).

[17] *Jester v. Wells Fargo Bank N.A. (In re Jester),* No. EO-15-002, 2015 WL 6389290, at *5 (10th Cir. BAP 2015).

when telling Debtor that the suspense funds could be applied. Debtor complains that "[r]ather than correcting their own mistake, [Creditor] instructed [Debtor] she must catch up the $299.08 in addition to her regular monthly payment to bring her account current."[18] Debtor alleges this conduct caused her material injury since she suffered emotional distress, was required to bring this action, and was allegedly made ineligible to have her private mortgage insurance removed from her account.

Creditor responds there was no violation of § 524(i). First, Creditor argues that a statutory exception stated in § 523(i) applies—that Creditor did not receive "payments required to be made under the plan in the manner required by the plan" because Creditor did not did not receive the full payment required by the plan in March 2019. Alternatively, assuming the exception does not apply, Creditor argues that "no payments were misapplied by Defendant [Creditor] and while an inadvertent error was made by Defendant's [Creditor's] customer service representative regarding the ability to use the $299.08 for a customer payment, the $299.08 was held in escrow in the Plaintiff's [Debtor's] account for proper application to expenses as authorized by the mortgage." [19]

---

[18] Doc. 25 p. 11.

[19] Doc. 26 p. 10.

9

## C. Court Finds Debtor is not Entitled to Relief Under § 524(i).

The Court declines to find, as contended by Creditor, that § 524(i) does not apply because Debtor failed to make a full payment in March 2019. Creditor provides no authority to support application of the exception here where the erroneous advice of Creditor's customer service representative caused Debtor's failure to make the full payment.

However, the Court finds Debtor has failed to prove necessary elements of Creditor's alleged violation of the discharge injunction. The Court's analysis of whether § 524(i) provides a remedy in this case begins with the language of the statute, "giving undefined terms their 'ordinary meaning.'"[20] Section 524(i) states it applies when a creditor fails to "credit payments received under a confirmed plan . . . in the manner required by the plan." In other words, the statute applies when there is a misapplication of a plan payment; when a payment is applied contrary to the terms of the creditor's allowed claim. In this case there was no misapplication. The proper application of the March 2019 suspense balance of $299.08 was simply delayed. Creditor did not fail to credit the balance. No additional charges were made to Debtor's account; there were no late fees, no service fees, and no

---

[20] *Kinney v. HSBC Bank USA, N.A. (In re Kinney),* 5 F.4th 1136, 1140 (10th Cir. 2021) *(quoting Ransom v. FIA Card Services, N.A.,* 562 U.S. 61, 69 (2011)).

additional interest charges. The accounting procedures crediting the funds in accord with the mortgage were simply delayed.

Misapplication of payments is the heart of a § 524(i) violation. But as stated in the stipulation, "Plaintiff [Debtor] does not allege that any payments made to Defendant [Creditor] were not applied."[21] She does not identify any payments that were misapplied. Rather, Debtor's primary complaint is that Creditor "should not be absolved of liability or responsibility when it provides its borrowers with misinformation."[22] Debtor suggests Creditor has an obligation to "correct" her account by applying $299.08 to her account.[23] Given Debtor's close attention to her monthly payments, it is understandable that the delay upset Debtor and caused her emotional distress. But § 524(i) does not provide a remedy for mistakes made by creditor's customer service department that do not result in the misapplication of payments. Absent misapplication of plan payments, § 524(i) does not empower the Court to sanction Creditor's internal procedures.

In addition, even if the delay were a misapplication, Debtor has not satisfied the statutory requirement that such misapplication was willful.

---

[21] Doc. 24 p. 4.

[22] Doc. 28 p. 3.

[23] Doc. 25 p. 11.

Willfulness is interpreted to mean simply that the creditor intended to commit the act proscribed by § 524(i); a debtor does not need to prove the creditor intended to violate the Code or the plan provisions. All that is required is a showing that the "creditor intended to apply payments improperly."[24] The creditor is presumed to intend his acts unless there is proof that the "improper crediting was a mistake in conflict with the creditor's normal procedures."[25]

In this case, the action complained of is the Creditor's delay in applying funds which were erroneously placed in suspense. The presumption that Creditor intended its acts is not present because the delay was the result of actions in conflict with Creditor's usual procedures. All of the entries in the Communications History Profile support this conclusion. The additional stipulated facts state nothing to the contrary. The Creditor's error was corrected. No unauthorized charges were made to Debtor's account, and there were no collection actions against Debtor.

Debtor has not satisfied the conditions for relief under § 524(i). The $299.08 suspense balance was not misapplied; its proper application was

---

[24] *In re Ridley*, 572 B.R. at 362.

[25] *Id.* (citing 4 *Collier on Bankruptcy* ¶ 524.08 (Richard Levin & Henry J. Sommer eds., 16th ed.))

simply delayed. Further, if such delay were construed to be a misapplication, the stipulated facts establish that the delay was a mistake contrary to Creditor's procedures, not a willful act. Given these findings, the Court does not address whether Debtor suffered material injury for purposes of a § 524(i) violation.

### III. Conclusion

The Court holds that Debtor has failed to satisfy her burden of proof to establish a violation of § 524(i). She has not shown by clear and convincing evidence that Creditor willfully failed to credit payments received under Debtor's confirmed plan. Rather, the stipulated facts establish there was simply a delay in the correct application of an escrow deposit, without any additional charges to Debtor. The delay was the result of Creditor's failure to follow its usual procedures, not a willful misapplication of a plan payment.

Judgment in favor of Creditor will be entered by separate order.

**It is so ordered.**

###